UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Charlene Phelps</u>,
    Claimant

        v.                                Case No. 10-cv-240-SM
                                          Opinion No. 2011 DNH 107
<u>Michael J. Astrue, Commissioner,</u>
<u>Social Security Administration</u>,
    Respondent

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Claimant, Charlene Phelps,
moves to reverse the Commissioner's decision denying her
application for Social Security Disability Insurance Benefits
under Title II of the Social Security Act (the "Act"), 42 U.S.C.
§ 423.  Document no. 12.  The Commissioner objects and moves for
an order affirming his decision.  Document no. 16.  Claimant also
moves for remand of this case for consideration of additional
evidence.  Document. no. 20.

**Factual Background**

I.   <u>Procedural History</u>

On September 21, 2007, claimant filed an application for
social security disability insurance benefits ("DIB benefits") as
well as Supplemental Security Income benefits ("SSI benefits"),
alleging that she had been unable to work since February 1, 2005.
She asserts eligibility for benefits based on disabilities due to

Crohn's disease and depression. Her application for benefits was denied and she requested an administrative hearing before an Administrative Law Judge ("ALJ").

On December 9, 2009, claimant (who was then 32 years old), her attorney, and an impartial vocational expert appeared before an ALJ. Claimant's husband testified on her behalf. On February 26, 2010, the ALJ issued his written decision, concluding that claimant was not disabled prior to the last date insured, December 31, 2007; that claimant had had the ability to do light work, with some restrictions; and that jobs existed in significant numbers that claimant could have performed. Claimant was thus ineligible for DIB benefits. The ALJ also found that from January 8, 2009, until the date of the decision claimant was disabled for purposes of receiving SSI benefits. The Decision Review Board selected the ALJ's decision for review, but did not complete its review within the time allowed. Accordingly, the ALJ's decision became the final decision of the Commissioner, subject to judicial review.

Claimant then filed a timely action in this court, appealing the denial of DIB benefits. Now pending are claimant's "Motion for Order Reversing Decision of the Commissioner" (document no. 12); claimant's "Motion for Remand" for consideration of new

evidence (document no. 20); and the Commissioner's "Motion for Order Affirming the Decision of the Commissioner" (document no. 16).

II.   Stipulated Facts

    Pursuant to Local Rule 9.1(d), the parties submitted a joint statement of stipulated facts which is part of the court record (document no. 22), and will be referenced to as appropriate.


**Standard of Review**

I.   Properly Supported Findings by the ALJ are Entitled to Deference

    Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1]  See 42 U.S.C. § 405(g); Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's findings

---

1    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Com., 383 U.S. 607, 620 (1966).

3

are supported by substantial evidence, the court must sustain them even when there may also be substantial evidence supporting the contrary position.  See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  See also Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  Irlanda Ortiz, 955 F.2d at 769 (citation omitted).  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly when those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,

4

195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health &</u>
<u>Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).


II.   <u>The Parties' Respective Burdens</u>

An individual seeking Social Security disability benefits is
disabled under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The Act places a heavy initial burden on
claimant to establish the existence of a disabling impairment.
<u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v.</u>
<u>Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir.
1991).  To satisfy that burden, claimant must prove that his
impairment prevents him from performing his former type of work.
<u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing
<u>Goodermote v. Secretary of Health & Human Services</u>, 690 F.2d 5, 7
(1st Cir. 1982)).  Nevertheless, claimant is not required to
establish a doubt-free claim.  The initial burden is satisfied by
the usual civil standard: a "preponderance of the evidence."  <u>See</u>
<u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. § 404.1512(g).  If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

> (1)  whether claimant is engaged in substantial gainful activity;
>
> (2)  whether claimant has a severe impairment;
>
> (3)  whether the impairment meets or equals a listed impairment;

6

> (4) whether the impairment prevents claimant from performing past relevant work; and
>
> (5) whether the impairment prevents claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .

42 U.S.C. § 423(d)(2)(A).


With those principles in mind, the court reviews the pending motions.


### Discussion

I.  <u>Background - The ALJ's Findings</u>

The ALJ concluded that claimant was not disabled during the period of insurability, which ended December 31, 2007, but became disabled on January 28, 2009.  In reaching his decision, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  He first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability.  Next, he

concluded that claimant has the severe impairments of Crohn's disease and depression.  Administrative Record ("Admin. Rec.") 12.  Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Admin. Rec. 12.

Next, the ALJ concluded that, prior to January 28, 2009, claimant retained the residual functional capacity to perform a substantial range of light work, but that she could have no interaction with the public and only occasional interaction with co-workers and supervisors, and that she was limited to performing only simple, repetitive and unskilled tasks.  Admin. Rec. 13.  The ALJ concluded, therefore, that claimant had not been capable of performing her past relevant jobs.  Admin. Rec. 16.

Finally, the ALJ considered whether there were any jobs in the national economy claimant could have performed prior to January 28, 2009.  Relying upon the testimony of a vocational expert as well as his own review of the medical record, the ALJ concluded that, notwithstanding claimant's limitations, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as

housekeeper or production/electrical assembler.  Admin. Rec. 16-
17.

Consequently, the ALJ concluded that claimant was not
"disabled," as that term is defined in the Act, through the date
of insurability, December 31, 2007.  Admin. Rec. 17.  Claimant,
therefore, was deemed ineligible for DIB benefits.  The ALJ also
determined, however, that claimant became disabled on January 28,
2009, and continued to be disabled through the date of the
decision, for purposes of claimant's application for SSI
benefits.  Admin. Rec. 17.

II.   The ALJ Did Not Err in Determining that Claimant's
      Impairments Did Not "Meet or Equal" a Listed Impairment

      Claimant argues that the ALJ erred in his step 3
determination that claimant did not have an impairment or
combination of impairments that met or equaled one of the listed
impairments.  Specifically, she argues that the ALJ should have
explained the basis for his finding, that the finding is not
supported by substantial evidence, and that the ALJ should have
obtained a medical opinion on the issue of equivalency.

      Although the ALJ did not explain his determination that
claimant's impairments did not meet or equal a listed impairment,
see Admin. Rec. 12, it need not be reversed if substantial

9

evidence supports it.  See Rodriguez-Rivera v. Comm. of Soc.
Sec., Case No. 08-1994 (JAF), 2010 WL 1416517, at **5-6 (D.P.R.
March 31, 2010) (affirming on "substantial evidence" grounds
ALJ's determination, rendered without explanation, that
claimant's impairments did not meet listed impairments).  See
also Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986)
("[T]he Secretary" need not "mechanically recite the evidence
leading to her determination.  There may be an implied finding
that a claimant does not meet a listing.").

       It was, of course, claimant's burden to prove that her
impairment or combination of impairments meets or equals a listed
impairment before the ALJ.  20 C.F.R. § 404.1512; Dudley v.
Secretary of Health & Human Services, 816 F.2d 792, 793 (1st Cir.
1987).  And, subject to limited review, the determination of
whether a claimant's impairment meets or equals a listing is a
decision generally reserved for the Commissioner.  See 20 C.F.R.
§ 404.1527(e)(2).

       A.   "Meets" a Listed Impairment
       To meet a listed impairment, the claimant's medical findings
(i.e., symptoms, signs, and laboratory findings) must satisfy all
of the criteria of that listing.  20 C.F.R. § 404.1525(c)(3).
See also Everngam v. Astrue, Case No. 08-cv-329-SM, 2009 WL

948654, at *4 (D.N.H. April 6, 2009).  Here, the ALJ considered four listed impairments, including that found in 5.06(A).  The 5.06(A) listed impairment requires (1) a diagnosis of Inflammatory Bowel Disease (of which Crohn's disease is one type) and (2) "[o]bstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.06(A) (emphasis added).

The record medical evidence prior to January 28, 2009, showed no proximal dilatation in the small intestine or colon.  See Admin. Rec. 324 (physician notes reporting "no proximal dilation of intestine"); Admin. Rec. 386 (barium study showing "mild stenosis of the distal terminal ileum without evidence of proximal distension"); Admin. Rec. 319 (physician notes reporting no proximal dilatation).  Accordingly, there is substantial evidence to support the ALJ's determination that claimant's impairments did not meet that listed impairment.

    B.   "Equals" a Listed Impairment

To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).  Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory

diagnostic techniques.  20 C.F.R. § 404.1526(b); <u>Mace v. Astrue</u>,
Case No. 08-14-BW, 2008 WL 4876857, at *1 (D. Me. Nov. 11, 2008).

Claimant argues that her impairments are equivalent to the
listing at 5.06(A).  Substantial record evidence, however,
supports the ALJ's contrary determination.  For example, the
state agency physician's opinion that claimant was not disabled
constitutes probative evidence of a lack of equivalence.[2]  <u>See</u>
<u>Jones v. Astrue</u>, Case No. 3:08-cv-00224, 2009 WL 2827942, at
**11-13 (S.D. Ohio Sept. 1, 2009) ("[S]ignatures of [medical
examiners] . . . on the 'physical residual functional capacity
assessment' . . . [are]probative evidence that medical
equivalence was considered by a qualified medical professional,
but not found to exist.").  Moreover, claimant, who has the
burden at step 3, did not submit medical expert opinion
supporting her claim of equivalence.  The ALJ, therefore, was

---

2    Contrary to claimant's argument, the ALJ was not required to
secure an additional medical opinion on the issue of equivalency.
The state agency physician's opinion that claimant was not
disabled fulfills the medical opinion requirement.  <u>See</u> SSR 96-
6p, 1996 WL 374180, at *3 (1996) ("When an administrative law
judge . . . finds that an individual's impairment(s) is not
equivalent in severity to any listing, the requirement to receive
expert opinion evidence into the record may be satisfied by" a
disability and transmittal form signed by a "State agency medical
or psychological consultant."); <u>see also</u> <u>Figueroa v. Astrue</u>, Case
No. 09-496A, 2010 WL 2621473, at *10 (D.R.I. June 25, 2010) (ALJ
was not required to obtain a separate medical opinion on step 3
determination where the record contained two disability
determination and transmittal forms, signed by a physician,
indicating that claimant was not disabled).

"entitled to draw a negative inference from . . . [this] failure to adduce any medical opinion that Claimant qualified under the listing." Canales ex. rel Pagan v. Astrue, Case No. 07-474-ML, 2009 WL 2059716, at *6 (D.R.I. July 13, 2009). See also Jones, 2009 WL 2827942, at *13 (claimant failed to show error at step 3 where she "failed to bring [to the ALJ's attention] evidence of claimed equivalency," such as an opinion from a "treating physician directly equating her impairment to one" under a listing.).


III. Substantial Evidence Supports the ALJ's Credibility and RFC Determinations

Claimant argues that the ALJ erroneously found that her claims of disabling pain, nausea/vomiting, fatigue, and diarrhea were not entirely credible and, consequently, erroneously found that she had the residual functional capacity to perform a substantial range of light work with the specified limitations. Claimant says the ALJ ignored pertinent evidence in the record, particularly evidence of chronic diarrhea, and failed to fairly consider the evidence he did address. The Commissioner counters that both the ALJ's credibility determination and his RFC assessment are supported by substantial evidence.

13

According to Social Security Ruling ("SSR") 96-7p, "an individual's statement(s) about his or her symptoms[3] is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled."  SSR 96-7p, 1996 WL 374186, at *2 (1996).  When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id., are alleged, SSR 96-7p outlines "a specific staged inquiry that consists of the following questions: (1) does the claimant have an underlying impairment that could produce his or her symptoms?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?" Guziewicz v. Astrue, Case No. 10-cv-310-SM, 2011 WL 128957, at *5 (D.N.H. Jan. 14, 2011).

In assessing credibility, the "regulations recognize that a person's symptoms may be more severe than the objective medical evidence suggests.  See 20 C.F.R. § 404.1529(c)(3). Therefore, the regulations provide six factors (known as the Avery factors) that will be considered when an applicant alleges pain."  Makuch v. Halter, 170 F. Supp. 2d 117, 126 (D. Mass. 2001) (internal punctuation omitted).  These are:

---

3    "A symptom is an individual's own description of his or her physical or mental impairment(s)."  SSR 96-7p, 1996 WL 374186, at *2.

(1) the nature, location, onset, duration, frequency,
radiation, and intensity of pain; (2) any precipitating
or aggravating factors; (3) the type, dosage,
effectiveness, and adverse side effects of any pain
medication; (4) any treatment, other than medication,
for the relief of pain; (5) any functional
restrictions; and (6) the claimant's daily activities.

See Avery, 797 F.2d at 29.  See also 20 C.F.R. § 404.1529(c).

Here, claimant testified that prior to the last date
insured, December 31, 2007, and thereafter, she experienced
persistent pain, vomiting, nausea, and diarrhea.  See Admin. Rec.
41-42 ("Q: [A]ll of those things that we just went over, could
you explain two years or so ago, or maybe a year or two before
you had surgery, how was it then, the same, better, or different?
A: It was about the same.  I mean now it's a little worse but is
was about the same.  I was always going to the bathroom.  I was
always in pain.  I was in and out of hospitals.").  The ALJ found
that the claimant's Crohn's disease could produce her symptoms,
which he acknowledged included pain, nausea, and vomiting.
Admin. Rec. 13.  He then discussed whether the objective medical
evidence and the subjective evidence substantiated claimant's
statements about the intensity and persistence of those symptoms
prior to the date last insured.  He found they did not.  Admin.
Rec. 13-14.

Specifically, the ALJ first noted that claimant's treating physician, Dr. Jones, had reported that there was no significant inflammatory activity; that claimant "was doing much better on Humira therapy,"; and that "hospital admissions for previous flares [were likely attributable] to either immunogenicity from treatment with Remicade[4] or the claimant's own noncompliance with medication."  Admin. Rec. 13- 14.   The ALJ also noted that the medical record documented only "minimal follow-up" in 2008, but a "dramatic[…]" increase in treatment in 2009.   Admin. Rec. 14.   With respect to the subjective factors, the ALJ noted a January 2008 consultative examination documenting claimant's activities of daily living, such as "getting her children ready for school, light housework, driving and self care."  Admin. Rec. 14.   The ALJ credited opinion evidence given by the state agency consultant "for a significant range of light work," because it was "consistent with the medical evidence of record."  Admin. Rec. 14.   Claimant challenges the ALJ's credibility determination on several grounds.

_____

4    Claimant argues that the ALJ was mistaken in his (apparent) beliefs that in the absence of inflammation claimant would not experience the symptoms she claims and that Remicade could be a cause of claimant's flare-ups.  Even assuming the ALJ was mistaken on these points, the other objective and subjective evidence in the record constitute substantial evidence in support of the ALJ's determination.  Any mistake, therefore, was harmless error.

She first argues that the ALJ was obligated to specifically identify which of claimant's statements regarding her symptoms, and which symptoms[5] in particular, he found not credible.  SSR 96-7p provides that "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2. Here, the ALJ acknowledged symptoms of pain, nausea, and vomiting (although he did not mention diarrhea), and, further, discussed evidence supporting his conclusion that the intensity and persistence of claimant's symptoms were not disabling prior to the last date insured.  Admin. Rec. 13-14.  The ALJ's credibility decision is "sufficiently specific to make clear" the weight the ALJ gave the claimant's statements and the reasons for that weight.  See id.  No greater precision is necessary under SSR 96-7p.  See Burrows v. Barnhart, Case No. 04-cv-145-PB, 2005 WL

---

5    Claimant contends that the ALJ erred in viewing her symptoms as "subjective" rather than as objectively documented by the medical evidence.  But the ALJ acknowledged that Crohn's disease could reasonably be expected to cause claimant's symptoms, and it was only the claimant's subjective statements about their intensity, persistence, and limiting effects that the ALJ assessed for credibility.  He found, based on his assessment, that the symptoms did not impose any limitations beyond those set forth in his RFC finding.

17

946821, at *5 (D.N.H. April 25, 2005) (ALJ's decision was
"'sufficiently specific'" where, "[i]n concluding that
[Claimant's] allegations of her disability were not credible, the
ALJ cited the evidence that she relied on in making her
determination.") (citing SSR 96-7p).

The ALJ's decision is somewhat troubling, however, to the
extent it does not specifically discuss claimant's assertion that
she suffered from chronic diarrhea prior to the date last
insured.  It is not necessary, however, to decide whether that
failure constitutes legal error, because, even if it does, it is
harmless error.  The medical records report, as late as one month
before the date last insured, that claimant denied experiencing
diarrhea.  Admin. Rec. 358.  Additional medical records from 2006
and 2007 also document the absence of diarrhea or no significant
diarrhea.  See Admin. Rec. 225, 230 (in April 2006 "only one
loose bowel movement per day"); Admin. Rec. 318, 338, 387 (in
July 2007 "no diarrhea" and only one "somewhat loose" bowel
movement a day); Admin. Rec. 296 (in October 2007 claimant denied
any significant diarrhea).  Accordingly, because there is
substantial evidence in the record that claimant's diarrhea was
not disabling prior to December 31, 2007, the ALJ's failure to
discuss that symptom specifically does not warrant reversal.  Cf.
Frampton v. Astrue, Case No. 10-35194, 2010 WL 4813710, at *1

18

(9th Cir. Nov. 4, 2010) ("The ALJ adequately considered all
symptoms arising from Frampton's alleged impairments, even though
the ALJ did not mention every impairment by name.").

     Claimant also argues that the ALJ erred by making a
"conclusory" credibility finding and that, instead, he was
obligated to fully explain his assessment of the Avery factors.
The argument is neither factually nor legally supportable.  The
ALJ provided more than just a conclusion about claimant's
credibility; he discussed the objective medical evidence,
claimant's activities of daily living, and pertinent medical
opinions in that context.  In addition, to the extent the ALJ did
not discuss every Avery factor, he did not err as a matter of
law.  "While the ALJ must consider each of these factors, there
is no requirement that he make specific findings regarding each
of the factors in his written decision."  Shields v. Astrue, Case
No. 10-10234-JGD, 2011 WL 1233105, at *11 (D. Mass. March 30,
2011).  Moreover, "although more express findings regarding
[claimant's symptoms and credibility], than those given here are
preferable," Frustaglia v. Secretary of Health & Human Services,
829 F.2d 192, 195 (1st Cir. 1987), the ALJ fulfilled his
obligation to consider the Avery factors when he "thoroughly
questioned the claimant regarding [her] daily activities,
functional restrictions, medication, prior work record, and

frequency and duration of pain . . . in conformity with . . . <u>Avery</u>."   <u>Id</u>.

Claimant further argues that the ALJ's finding that she engaged in minimal medical follow-up in 2008 is not supported on the record.   Claimant appears to be correct.   The one treatment note in the record — from claimant's surgeon dated December 2008 — reports that claimant "had multiple studies and endoscopies through the year," and that she had been taking Humira "every 2 weeks . . . for the last year."   Admin. Rec. 566.   However, the evidence of medical follow-up in <u>2008</u> does not necessarily undermine the ALJ's credibility determination regarding claimant's claims of debilitating symptoms prior to her date last insured in December of 2007.   In addition, the ALJ's credibility determination is supported by myriad other evidence on the record, such that his error in finding that claimant engaged in only minimal medical follow-up in 2008, does not warrant reversal.[6]   Such evidence includes:

- Medical treatment notes from April 2006 to November 2007 reporting minimal or no nausea or vomiting after hospitalizations and "modest abdominal pain" "from time to time, much better than before," and minimal or no diarrhea (Admin. Rec. 259, 296, 318, 338, 356, 358, 387);

[6]   Even the December 2008 treatment note itself reports that "[o]n examination today [Claimant] does not appear acutely ill." Admin. Rec. 566.

- Evidence of daily activities, such as claimant's statement on a November 2007 Disability Report that she does light housework and drives as needed; her surgeon's pre-surgery statement in early January 2009 that claimant "is quite active around the house"; claimant's testimony that she helped her kids with their homework and to get ready for school and bed; and her husband's testimony in December 2009 that "it's just been a while" since claimant stopped being able to go out and do things as a family (Admin. Rec. 54, 178-79, 506);

- Claimant's testimony and medical reports evidencing responsiveness to treatment/medications (Admin. Rec. 39-40, 297, 304);[7]

- Medical records from April 2006 through November 2007 noting flare-ups but also noting that claimant was sometimes noncompliant with medication despite, in some instances, financial assistance from manufacturer's patient assistant program (Admin. Rec. 261, 318, 334, 344, 412)[8].

Reversal is also not warranted on the ground that the ALJ did not discuss the testimony of claimant's husband about her limitations in daily activities and that she experienced constant pain and went to the bathroom 20 to 30 times a day.  Admin. Rec. 51-52.  Failure to give reasons for disregarding a husband's testimony is error.  Fedele v. Astrue, Case No. 08-cv-520-JD,

---

[7]   Impairments that can be controlled with medication are not disabling.  See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).  Dr. Jones also noted that claimant's Crohn's disease would be easier to control if she quit smoking (Admin. Rec. 222) and she was advised to do so on several occasions.  Admin. Rec. 222, 232, 357, 366.

[8]   Claimant points to evidence supporting her financial explanation for medication noncompliance.  However, other evidence, as noted, contradicts that explanation.

2009 WL 1797987, at *5, n.11 (D.N.H. June 23, 2009).  However, the error is harmless where, as here, other evidence contradicts that testimony.  Id.  ("The ALJ did not give reasons for disregarding [the husband's] testimony, which is error.  The error, however, is harmless.  Fedele's husband's testimony about the severity of her impairments . . . is contradicted by the medical record.").

In her remaining arguments, claimant points to evidence supporting her claims of disabling symptoms.  As noted above, there is substantial evidence to support the ALJ's determination; the fact that claimant can point to contradictory evidence is not enough to warrant reversal.  See Consolo, 383 U.S. at 620 ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").  See also Irlanda Ortiz, 955 F.2d at 769 ("[R]esolution of conflicts in the evidence . . . are for the [Commissioner].").

For all of the foregoing reasons, reasonable minds could accept the record evidence as substantial, and sufficient to support the ALJ's conclusion that claimant's complaints regarding the intensity and persistence of symptoms during the period of

insurability were not credible, and that, therefore, claimant

retained the residual functional capacity specified by the ALJ.[9]


IV.  <u>The ALJ Did Not Err in His Determination of the Disability</u>
     <u>Onset Date</u>

     The disability onset date "should be set on the date when it

is most reasonable to conclude from the evidence that the

impairment was sufficiently severe to prevent the individual from

engaging in" substantial gainful activity for at least twelve

consecutive months.  SSR 83-20, 1983 WL 31249, at *3 (1983).  The

onset date must be determined based on the facts of the case "and

can never be inconsistent with the medical evidence of record."

<u>Id</u>.  "At the hearing, the [ALJ] should call on the services of a

medical advisor when onset must be inferred."  <u>Id</u>.


     Claimant challenges the ALJ's determination of the onset

date, January 28, 2009, on the ground that he should have

---

9    Claimant also argues that the ALJ's finding that she could
not perform her past relevant work undermines the ALJ's RFC
determination.  She bases this argument on the fact that the VE
testified that a person with claimant's RFC <u>could</u> do one of her
past jobs.  <u>See</u> document no. 12-1, pg. 7 ("The ALJ found the
claimant did not have the RFC to perform her past work at step
four . . . and the ALJ, logically, must find no less restrictive
RFC at step five.").  The argument is without merit.  If
anything, the ALJ erred in concluding that claimant could perform
none of her past relevant work.  But, of course, claimant does
not challenge that finding.  This court's review of the ALJ's RFC
determination demands only that the RFC be supported by
substantial evidence, and the court necessarily finds that it is.

obtained a medical opinion regarding the issue.  But the medical evidence here was sufficiently unambiguous and "adequate to show" that the claimant was not disabled prior to her last date insured, December 31, 2007.  <u>Fedele</u>, 2009 WL 1797987, at *4.  Here, it was not necessary to infer the onset date, given the medical evidence, so the ALJ was not required to consult a medical advisor as provided for in SSR 83-20.  <u>Id</u>.  ("[T]he medical records were adequate to show that Fedele's symptoms had not become disabling during [the period of insurability] . . . and no inference of an onset date was necessary, which would implicate SSR 83-20.").[10]  Specifically, in August and November 2007, claimant's vomiting was brought under control with medication, but after her surgery in January 2009, the medication did not help.  In addition, after her hospitalizations in 2007, claimant's pain, vomiting, and diarrhea improved.  In contrast, months after claimant's January, 2009, surgery, claimant's doctor reported chronic diarrhea with 15-20 bowel movements per day.  Moreover, the medical records before the ALJ provide a complete chronology and do not suggest a clear alternative date within the period of insurability to the date determined by the ALJ.  <u>See</u> <u>Henderson ex. rel Henderson v. Apfel</u>, 179 F.3d 507, 513 (7th Cir.

---

10    Some courts have further held that "the reference to a medical advisor in SSR 83-20 is not mandatory, so that failure to comply may not require reversal of the ALJ's decision."  <u>Fedele</u>, 2009 WL 1797987, at *4 (citing <u>Eichstadt v. Astrue</u>, 534 F.3d 663, 667 (7th Cir. 2008)).

1999) (ALJ was not required to elicit testimony from a medical
advisor to determine the onset date of disability where the
claimant's medical chronology was complete, the evidence did not
suggest a clear alternative date to that determined by the ALJ,
and the date chosen was supported by substantial evidence in the
record).

V.   The ALJ Did Not Err In His Consideration of the Testimony of
     the Vocational Expert

     Having found that the ALJ's credibility determination and
RFC is supported by substantial evidence, the court finds no
merit in claimant's arguments relating to the VE's testimony and
the hypotheticals posed to her.  First, because the ALJ did not
err in his RFC determination, he was not required to adopt the
VE's testimony in response to the hypothetical which fully
credited the testimony of the claimant and her husband —
testimony the ALJ found less than entirely credible.  See Wright
v. Barnhart, 389 F. Supp. 2d 13, 22 (D. Mass. 2005) (VE's
response to a hypothetical was not controlling where the
hypothetical was based on an RFC assessment that the ALJ had
rejected).  Second, the ALJ was not required to pose a
hypothetical to the VE which incorporated any complaints he
deemed not credible.  See Troisi v. Apfel, Case No. 99-2205, 2000
WL 1230004, at *2 (1st Cir. Aug. 23, 2000) ("The hypothetical
which the ALJ posed to the VE fairly summarized the limitations

which were found to be credible and supported by the medical
evidence.") (table).

VI.   <u>Remand for Consideration of Claimant's New Evidence is Not
      Warranted</u>

      Sentence six of Section 405(g) authorizes a court to remand
a case for consideration of new evidence where the evidence is
"material" and claimant has shown "good cause" for not submitting
the evidence earlier.  42 U.S.C. § 405(g).  New evidence is
material "only if, were the proposed new evidence to be
considered, the [Commissioner's] decision 'might reasonably have
been different.'"  <u>Evangelista v. Secretary of Health & Human
Services</u>, 826 F.2d 136, 140 (1st Cir. 1987) (quoting <u>Falu v.
Secretary of Health & Human Services</u>, 703 F.2d 24, 27 (1st Cir.
1983)).


      Claimant seeks a sentence six remand for consideration of
two treatment letters written by Dr. Jones in December, 2007, and
March, 2008, which, she says, her counsel inadvertently failed to
send to the ALJ.  She broadly alleges that the letters are
material because they "show a transition from [Dr. Jones'] care,
the continuing problems of the claimant throughout 2008 and the
ultimate transfer of plaintiff's care to Dr. Knab."  Document no.
20, pg. 2.  But she has not explained how such evidence might
have changed the ALJ's determination that she was not disabled

during the period of insurability.  In fact, the December, 2007, letter likely would not have changed the ALJ's decision because it appears to be cumulative of treatment notes that the ALJ had before him for the year 2007.  Dr. Jones' March, 2008, letter, likewise, does not appear to be material.  In that letter, Dr. Jones stated that he "cannot comment on whether [new antidepressant medication] might be responsible for the exacerbation of [claimant's recent] diarrhea."  Although he opined that "it is certainly possible that [the diarrhea] . . . might represent a flare of her Crohn's disease," there "was no evidence of Crohn's disease on her small-bowel follow-through performed this fall."  In the end, Dr. Jones stated that he was "not convinced that active Crohn's is the cause for [Claimant's] symptoms at present . . . [although] it cannot be entirely excluded as a consideration."  Document no. 21-1, pg. 1.

In addition, claimant has not shown "good cause" for failing to submit the letters.  At most, she has established an inadvertent mistake by her counsel, which by itself does not constitute good cause for purposes of § 405(g).  See Jackson v. Comm'r of Soc. Sec., Case No. 07-14184, 2009 WL 612343, *3 (E.D. Mich. March 6, 2009) ("Mistakes by an attorney are not considered to be 'good cause.'").

## Conclusion

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 12) is denied.  The Commissioner's motion to affirm his decision (document no. 16) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**


_____
Steven J. McAuliffe
Chief Judge

July 7, 2011

cc:  Vincent A. Wenners, Jr., Esq.
     Gretchen L. Witt, Esq.